## Case No. 14,948.

UNITED STATES v. DENNEE et al.

[3 Woods, 47.] [1]

Circuit Court, D. Louisiana. April Term, 1877.

CONSPIRACY TO DEFRAUD UNITED STATES—INDICTMENT—AVERMENT OF MEANS AGREED ON— OFFENCES.

1. An indictment for a conspiracy to do an unlawful act, need not aver the means agreed

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

on whereby the conspiracy was to be carried into effect.

[Cited in brief in U. S. v. Patterson, 55 Fed. 616.]

2. An indictment for conspiracy under section 5440, Rev. St., which avers the conspiracy and the overt acts done to carry it into effect, is sufficient without stating the means agreed on to accomplish the purpose of the conspiracy.

[Cited in brief in U. S. v. Patterson, 55 Fed. 616.]

3. Section 30 of the act of March 2, 1867 [14 Stat. 484], entitled "An act to amend existing laws relating to internal revenue, and for other purposes," which is embodied in the Revised Statutes as section 5440, prohibits a conspiracy to defraud the United States, not only by committing some one or more of the offenses described in other sections of the act, but in any manner whatever.

Heard on demurrer to the indictment. The indictment was found on the 6th day of June, 1876, and was predicated on section 30 of the act approved March 2, 1876, entitled "An act to amend existing laws relating to internal revenue, and for other purposes." 14 Stat. 484. The section declares, "that if two or more persons conspire, either to commit any offense against the laws of the United States, or to defraud the United States in any manner whatever, and one or more of said parties to said conspiracy shall do any act to effect the object thereof, the parties to said conspiracy shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be liable to a penalty of not less than one thousand dollars, and not more than ten thousand dollars, and to imprisonment not exceeding two years." This section is substantially embodied in the United States Revised Statutes as section 5440. The indictment charged that Harriet A. Mills, spinster, Samuel Gamage, yeoman, R. Stewart Dennee, lawyer, and others, naming them all, late of the said district of Louisiana, being persons of evil minds and dispositions, on the first day of March, in the year of our Lord eighteen hundred and seventy-four, at and within the state of Louisiana, and the district of Louisiana aforesaid, and within the jurisdiction of said court, with force and arms, unlawfully and wickedly did conspire, combine, confederate and agree together and among themselves, and with Martha L. Knight, Joseph P. Murphy, * * * and divers other evil-disposed persons, whose names are as yet to the grand jurors unknown, unlawfully and fraudulently to defraud the United States of America of a large sum of money, to wit, forty thousand dollars lawful money of the United States, of the property and moneys of the United States. Then followed averments setting forth, with great particularity and precision, numerous overt acts of the defendants, or some of them, done to effect the object of the conspiracy. The overt acts charged were the prosecution, by suit against the United States in the court of claims, of a false, feigned and fraudulent claim by false and perjured testimony. The demurrer alleged that the indictment was not sufficient in law,

and that defendants were not bound to answer the same.

John H. New, Asst. U. S. Atty.
Wm. H. Hunt, John Ray, and F. W. Baker, for defendants.

WOODS, Circuit Judge. It is objected to the indictment, that it does not set out and aver the manner in which and the means whereby the object of the conspiracy charged was to be carried into effect, and that the averments setting out the overt acts, done in furtherance of the conspiracy, do not supply this defect. There is much conflict in the adjudged cases, on the point whether, in an indictment for conspiracy to cheat and defraud, it is necessary to aver the means agreed on to carry the conspiracy into effect. The affirmative of the proposition has been held in Massachusetts. Com. v. Hunt, 4 Metc. [Mass.] 111; Com. v. Eastman, 1 Cush. 189; Com. v. Shedd, 7 Cush. 514; Com. v. Wallace, 16 Gray, 221. It has also been so held in the following cases: State v. Parker, 43 N. H. 83; State v. Roberts, 34 Me. 320. In the case of Lambert v. People, 6 Cow. 578, the indictment being for a conspiracy to cheat and defraud, etc., without averring specifically the means to be used, the court for the trial of impeachments and errors was equally divided on the question whether the indictment was a good one or not. It was decided by the casting vote of the president, that it was defective, and the judgment of the supreme court sustaining it reversed. On the other hand, it is the settled English rule that the words "unlawfully, fraudulently and deceitfully did conspire, combine, confederate and agree together to cheat and defraud" one "of his goods and chattels," contain a sufficient allegation of conspiracy, without mention of any means intended. 2 Bish. Cr. Law, § 200, and cases there cited. See, also, Rex v. Gill, 2 Barn. & Ald. 204; Rex v. Seward, 1 Adol. & E. 706. The same doctrine is held in the following American cases: People v. Richards, 1 Mich. 216; State v. Younger, 1 Dev. 357. A somewhat careful consideration of the authorities convinces me that the better reason is with those who deny the necessity of setting out the means by which the conspiracy was to be carried into effect. But it seems clear that the statute upon which this indictment is based was intended to relieve the pleader from any supposed necessity of setting out the means agreed upon to carry out the conspiracy, by requiring him to aver some act done in furtherance of the conspiracy, and making such act a necessary ingredient of the offense. In the case of Com. v. Shedd, 7 Cush. 514, the court said, that "the great difficulty in giving effect to the allegation of overt acts in an indictment for conspiracy on a motion in arrest of judgment for insufficiency of the indictment, is this, that overt acts are merely alleged by way of aggravation of the offense, and though alleged, they need not be proved,

and the alleged conspiracy might be found by the jury without proof of the precise overt acts charged to have been done in pursuance of the conspiracy." That difficulty does not exist here, for the overt act is a part of the offense, and must be proved, as laid in the indictment. The reason given in the case just quoted from, why the averment of overt acts cannot have effect in the indictment for conspiracy, does not apply. In my opinion, therefore, this indictment which avers the conspiracy, and then sets out the overt acts done to carry it into effect, is sufficient, and it is not necessary to aver the means agreed on to effect the conspiracy. The averment of acts done to effect the object of the conspiracy, and which must be proven to sustain the indictment, is more than the equivalent of an averment of means agreed on to carry it into effect. This objection to the indictment is not well taken.

It is further objected to the sufficiency of the indictment, that the law upon which it is based is exclusively a revenue law, and intended only for the punishment of conspiracies to do certain things prohibited by the act itself. And it is urged that this is not a revenue case, as the overt acts charged are not prohibited by the body of the act, on the thirtieth section of which the indictment is based. In other words, it is claimed that because the act of March 2, 1867, supra, does not in terms forbid the prosecution of fraudulent suits against the United States in the court of claims, and the recovery of judgments and the receipt of money thereon by means of false and fraudulent claims, and perjured testimony, a conspiracy to commence and carry on to a final judgment such a suit, cannot be punished under section 30 of said act above quoted. This, it seems to me, is too narrow a reading of section 30. It denounces a conspiracy to defraud the United States, not simply by committing one or more of the offenses specified in the act, but to defraud the United States "in any manner whatever," or to commit any offense against the laws of the United States. The language of the section is too broad to be confined within the narrow range sought to be imposed upon it.

It is next said that it is not an indictable offense—to prosecute a suit in the court of claims—that the court to which the claim is submitted must pass upon its genuineness, and if held good, no other court can inquire into or re-examine the question thus passed upon, that the United States is a party defendant to the suit before the court of claims, has the right and opportunity to defend, and cannot, pending the decision of the question therein involved, or subsequent thereto, proceed criminally against the other parties to the cause in another court to punish them for prosecuting a false and fraudulent claim. Non constat, but the court of claims may decide the claim just.

The real question is, whether a conspiracy to prosecute a false and fraudulent claim against the United States, and to procure the evidence of false witnesses to support and maintain it, is a conspiracy to defraud the United States. If it is, it falls within the purview of the statute. If a witness gives a false deposition in a civil cause, he may be prosecuted therefor criminally, notwithstanding the fact that the court in the civil cause must pass upon the credibility of his testimony. And the fact that, on the strength of his false testimony the civil case has been decided, is no reason why the false witness should not be prosecuted for his crime. The successful issue of the perjury rather furnishes an additional reason for the criminal prosecution.

The position taken in support of the demurrer, amounts to this: that no fraud, no perjury, no subornation of perjury, employed to gain a civil cause can ever be punished, because to prosecute and punish the crime would be equivalent to a collateral re-examination of the cause tried and determined by another court. To state the proposition is to refute it.

It is further insisted that the offense charged is barred by the statute of limitations. The indictment was found June 6, 1876, and the offense is laid as of March 1, 1874. The section of the law on which the indictment is based has been held to constitute a part of the revenue laws of the United States (U. S. v. Rindskopf [Case No. 16,165]; U. S. v. Fehrenback [Id. 15,083]), and by section 1046, Revised Statutes, prosecutions for any crime arising under the revenue laws of the United States must be instituted within five years after the offense is committed. The original section on which the indictment is based, is embodied in a law devoted to the subject of the internal revenue, and it seems clear that a conspiracy to defraud the United States by withdrawing money from its treasury by a false and fraudulent claim, supported by false testimony, is an offense against the revenue laws of the United States. I do not understand that the term "revenue laws" is confined exclusively to laws providing for the collection of the revenues, but may extend to any provision of the laws on the subject of revenue, intended to protect the funds collected under those laws, or which in any other manner have lawfully been paid into the treasury. As the indictment was filed within five years after the date fixed as the time when the offense was committed, the prosecution is not, in my judgment, barred.

It is urged as a further objection to the indictment, that there is a fatal variance and repugnancy in the dates set out in the indictment. After a careful reading of the indictment, I am unable to find any impossible or repugnant dates. Demurrer overruled.

[A demurrer to an indictment against Dennee and Gamage for subornation of perjury was sustained at the same term of the court. See Case No. 14,947.]